UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SILVATICI,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>Defendant. | Case No. 17-cv-02783-JSC<br><br>**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 21, 22 |

Plaintiff Robert Silvatici seeks social security benefits for a combination of mental and physical impairments, including: lumbar spine degenerative disc disease, peripheral neuropathy, vision problems, depression, and residuals of a cerebellar stroke. (*See* Administrative Record ("AR") 82.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying his benefits claim. Before the Court are Plaintiff's and Defendant's motions for summary judgment.[1] (Dkt. Nos. 21 & 22.) Because the Administrative Law Judge's ("ALJ's") treatment of the medical opinion evidence constitutes reversible legal error, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross motion, and REMANDS for further proceedings.

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 10 & 13.)

than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do her previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). As explained by the Ninth Circuit, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted); *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). However, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* A court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of

2

supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

**PROCEDURAL HISTORY**

In July 2012, Plaintiff filed an initial claim for Social Security Disability Insurance Benefits under Title II of the Social Security Act, (AR 82); his application was completed in January 2013, (AR 166-67). Plaintiff alleged disability beginning September 18, 2009.[2] (*Id.*) His application was denied initially and on reconsideration. (AR 93, 114.) Plaintiff then filed a request for a hearing before an ALJ. (AR 129.) On May 6, 2015, ALJ Teresa Hoskins Hart held a hearing during which both Plaintiff and vocational expert ("VE") Thomas Linvill testified. (AR 40-81.)

## I. The ALJ's Findings

On August 17, 2015, the ALJ issued a written decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Social Security Act based on the testimony and evidence and using Social Security Administration's five-step sequential evaluation process for determining disability. (AR 20-39.)

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since July 1, 2011, the amended alleged onset date, through his date of last insured of December 31, 2014. (AR 22 (citing 20 C.F.R. 404.1571 *et seq*).)

At step two, the ALJ determined that the objective medical evidence indicated that Plaintiff's lumbar spine degenerative disc disease, status-post fusion with instrumentation; peripheral neuropathy; and status-post mild cerebral infarction constitute "severe impairments." (AR 22-23 (citing 20 C.F.R. 404.1520(c)).) The ALJ further determined that Plaintiff's vision problem was non-severe based on treatment records demonstrating that Plaintiff had "20/20 acuity in both eyes with glasses when he saw an optician to have his eyeglasses prescription adjusted in October 2014." (AR 22-23.) Likewise, the ALJ found that Plaintiff's "medically determinable mental impairment of depressive disorder did not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and was therefore non-severe." (AR

---

[2] Prior to his hearing before the ALJ, Plaintiff "amended his alleged onset date to July 1, 2011." (AR 20.)

3

23.) The ALJ based this determination on her consideration of "the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)." (*See* AR 23-24 (analyzing Plaintiff's "activities of daily living"; "social functioning"; "concentration, persistence or pace"; and "episodes of decompensation").)

At the third step, the ALJ concluded that "[t]hrough the date of last insured, [Plaintiff] did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AR 25 (citing 20 C.F.R. 404.1520(d), 404.1525 and 404.1526).) In reaching this conclusion, the ALJ considered listing 1.04 based on Plaintiff's lumbar spine impairment, noting that he has "significant problems" that have necessitated three surgeries—none of which alleviated his symptoms. (AR 25.) The ALJ noted, however, that although Plaintiff's "allegations are documented in the file," the objective medical evidence did not indicate the "severity of listing 1.04." (AR 25-26.) The ALJ further considered listing 11.04 based on Plaintiff's "stroke in March 2014," noting the requirements of that listing in comparison with Plaintiff's post-stroke treatment and symptoms, and finding that Plaintiff's "purported stroke and its residual effects do not meet the severity of listing 11.04." (AR 26.) The ALJ next considered and rejected "listing 11.14 because of the diagnosis of peripheral neuropathy," noting that despite Plaintiff's diagnosis, "the file contains little evidence of his treatment" for the condition, and "little evidence . . . that it causes significant persistent disorganization of motor function in two extremities." (*Id.*)

In between steps three and four, the ALJ considered Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff retained the RFC to perform sedentary work with the following limitations: "required an assistive device for ambulation; could not ambulate for more than 5 minutes without interruption; and could not stand or walk for more than 1 hour total in a workday; could not ambulate on uneven surfaces; and avoids concentrated exposure to hazards." (AR 27.)

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 28.) The ALJ noted that Plaintiff had a lengthy treatment history associated with his lumbar spine condition, including three surgeries, and found that "these issues and problems . . . require constant monitoring"; however, the ALJ found that "the level of limitation from these impairments is accounted for in the residual functional capacity above that allows for weight-bearing activities in very short spurts and work that is primarily performed in the seated position." (AR 31.) Further, the ALJ found that "the level of limitation alleged is not supported by the notes that show full motor strength, intact sensation, and continued ability to ambulate only requiring a cane." (*Id.*)

As for the medical opinion evidence, the ALJ afforded "limited" weight to the opinion "from the state agency medical consultant at the initial level" because the opinion did not "adequately account for [Plaintiff's] continued problems with his back pain." (AR 28.) The ALJ likewise afforded limited weight to the opinion "from the state agency medical consultant at the reconsideration level" because the opinion failed to account for "additional weight bearing limitations . . . warranted by [the] record." (AR 29.) The ALJ next considered the opinion of examining consultative orthopedist Dr. Daniel Katzenberg, affording it "substantial but not full weight" because it "is only partially supported by the medical evidence of record." (*Id.*) The ALJ then considered the opinion of Plaintiff's orthopedic surgeon Dr. Ravi S. Bains, who opined that Plaintiff "should be on permanent disability." (*Id.*) The ALJ afforded Dr. Bains' opinion "little weight," finding that it was primarily based on Plaintiff's "uncorroborated subjective complaints, not objective data."[3] (AR 30.) Similarly, the ALJ afforded little weight to the opinions of Dr. Gwendolyn Okuzumi, Plaintiff's primary care physician, finding that her opinions regarding Plaintiff's "permanent disability" and functional limitations were not supported by objective medical evidence. (*Id.*) The ALJ further questioned the veracity of Dr. Okuzumi's medical source statement.[4] (*See* AR 31 (noting that "the almost entirely typed responses on [the] form and

---

[3] The ALJ also discussed Dr. Bains' use of the term "permanent disability," and found that it "may not mean what . . . Dr. Bains wants it to mean" because "[t]he term ['disability'] is one that has specific definitions depending on the disability system and provider." (AR 29-30.)
[4] The ALJ found that "the almost entirely typed responses on [the] form and language utilized

5

language utilized raises a question of the extent to which someone else composed and completed [the] form for the physician's signature.").) Finally, the ALJ afforded "great weight to the opinions of the state agency psychiatric and psychological consultants" because their opinions regarding the severity of Plaintiff's alleged mental impairments were "consistent with [Plaintiff's] observed activities and capabilities." (*Id.*)

At step four, the ALJ found that "[t]hrough the date last insured, [Plaintiff] was capable of performing past relevant work as a Software Engineer" because such "work did not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity." (AR 33 (citing 20 C.F.R. 404.1565).) Thus, the ALJ did not reach step five and determined that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from July 1, 2011, the alleged onset date, through December 31, 2014, the date last insured." (*Id.* at 30 (citing 20 C.F.R. 404.1520(f)).)

## II. The Appeals Council

Plaintiff filed a request for review of the ALJ's decision on September 16, 2015, arguing that he is "totally disabled." (AR 15.) On March 10, 2017, the Appeals Council denied Plaintiff's request for review making the ALJ's decision final. (AR 8-13.)

## III. This Action

Plaintiff commenced this action for judicial review on May 15, 2017, pursuant to 42 U.S.C. § 405(g). (Dkt. No. 1.) Plaintiff then moved for summary judgment, (Dkt. No. 21), and the Commissioner filed her cross-motion, (Dkt. No. 22).

**DISCUSSION**

Plaintiff asserts that he met the statutory requirements to receive disability benefits under the Social Security Act and that the ALJ erred in evaluating the medical opinion evidence; specifically, Plaintiff argues that the ALJ failed to afford controlling weight to the medical opinions of his treating physicians, Dr. Ravi S. Bains and Dr. Gwendolyn Okuzumi, and instead "incorrectly relied on opinions of doctors who never examined the Plaintiff." (Dkt. No. 21 at 4-5.)

---

raises a question of the extent to which someone else composed and completed [the] form for the physician's signature." (AR 31.)

6

Plaintiff further argues that the ALJ erred in assessing the evidence related to his cerebellar stroke and eye condition. Plaintiff's opposition to Defendant's cross motion for summary judgment also argues that the ALJ erred in finding Plaintiff's subjective symptom testimony not credible. The Court addresses Plaintiff's arguments below and concludes that remand is necessary because the ALJ failed to follow the required methodology in weighing the opinions of treating physicians Dr. Bains and Dr. Okuzumi.

**I.      Evaluation of the Medical Opinion Evidence**

   **A.      Legal Standard**

Courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examiner nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Further, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo*, 871 F.3d at 675 (quoting 20 C.F.R. § 404.1527(c)(2)).

If a treating physician's opinion is not afforded controlling weight, the ALJ must weigh the opinion "according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Failure to consider the factors listed under 404.1527(c)(2)-(6) "alone constitutes reversible legal error." *Id.* at 676.

An ALJ may reject the "uncontradicted opinion of a treating or examining doctor" only by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks and citation

7

omitted). And "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986), *superseded by statute on other grounds as recognized in Bunnell v. Sullivan*, 912 F.2d 1149, 1154 (9th Cir. 1990). Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. The opinions of non-examining physicians may "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Ultimately, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Thus, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014). In conducting its review, the ALJ must consider the entire record and cannot rely only on portions of the record while ignoring conflicting evidence. *See Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (finding error where "ALJ selectively relied on some entries in [plaintiff's] records from San Francisco General Hospital and ignored the many others that indicated continued, severe impairment.").

**B.     The ALJ Erred in Evaluating Medical Opinions of Treating Physicians**

The ALJ failed to follow the required methodology in weighing the opinions of treating physicians Dr. Bains and Dr. Okuzumi. As previously discussed, if a treating physician's opinion is not afforded controlling weight, the ALJ must weigh the opinion "according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of

8

the treatment relationship, supportability, consistency with the record, and specialization of the physician." *See Trevizo*, 871 F.3d at 675 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ failed to do so.

### 1. Dr. Bains

Plaintiff's orthopedic surgeon, Dr. Bains, performed surgery on Plaintiff's lumbar spine for diagnosed: (1) "degenerative spondylolisthesis" in September 2011; (2) "spinal stenosis of the lumbar spine with neurogenic claudication" in April 2013; and (3) "spinal stenosis of the lumbar spine with neurogenic claudication" and "degenerative disc disease, lower back" in December 2013. (*See* AR 385, Ex. 2F at 63; 999, Ex. 6F at 57; 1351, Ex. 12F at 73.) Following a post-surgery follow-up in May 2013, Dr. Bains provided a statement in which he recommended that Plaintiff "apply for permanent disability." (AR 1074, Ex. 7F at 1.) In June 2014, Dr. Bains further opined that Plaintiff "should be on permanent disability." (AR 1655, Ex. 21F at 99.)

The ALJ's rejection of Dr. Bains' opinions states, in its entirety:

> The undersigned also considered the opinions from Ravi Baines [sic], M.D., the claimant's orthopedic surgeon, as contained in a letter date[d] May 18, 2013 (Exhibit 7F/2) and a treatment note dated June 27, 2014 (Exhibit 21F/98-99). In the letter, Dr. Bains noted she would recommend the claimant apply for permanent disability because of the observations made during a visit with a physician's assistant the day before the letter was written (Exhibit 7F/2). In the treatment note, Dr. Bains opined the claimant should be on permanent disability (Exhibit 21F/98-99). Both statements use the term "permanent disability" and both recommend the claimant be considered for "permanent disability." The term disability is one that has specific definitions depending on the disability system and provider. The level of impact and limitations caused by impairments is different considering the different disability systems. As such, the term may not mean what the claimant or Dr. Bains wants it to mean for the claimant in his current disability case. Furthermore, the determination of disability is one that is reserved for the Commissioner of Social Security (see Social Security Ruling 96-5p). In addition, the examination notes that Dr. Bains relied on when she wrote the initial letter are primarily the claimant's subjective complaints about his daily limitations that are not objectively corroborated by a thorough physical examination (see Exhibit 8F/15). The notes from the physician's assistant contain little to no objective signs and findings and numerous examples from the claimant's own statements about limitations. As such, the basis for Dr. Bains' opinion is the claimant's uncorroborated subjective complaints, not objective data. Therefore, the undersigned gives little weight to the opinions from Dr. Bains.

9

(AR 29-30.) The ALJ's consideration of Dr. Bains' opinion makes no mention of the three surgeries he performed on Plaintiff, the timeframe of those surgeries in relation to Dr. Bains' opinions, or how Dr. Bains' firsthand, expert knowledge of Plaintiff's lumbar spine condition fails to support his opinions.[5] The ALJ instead assigned little weight to Dr. Bains' opinions because they were "primarily" based on Plaintiff's "uncorroborated subjective complaints." (AR 30.)

The ALJ's decision failed to consider the length of, or the nature and extent of Plaintiff's treatment relationship with Dr. Bains, as required under *Trevizo*. *See* 871 F.3d at 676. This is especially troubling given that Dr. Bains' treatment history with Plaintiff appears to undercut the ALJ's finding that "the basis for Dr. Bains' opinion is the claimant's uncorroborated subjective complaints, not objective data," (*see* AR 30). The record instead suggests that at the time of his opinions in May 2013 and June 2014, Dr. Bains had firsthand, objective medical knowledge of Plaintiff's lumbar spine condition beyond mere "subjective complaints" based on the surgeries he performed in September 2011, April 2013, and December 2013. Thus, Dr. Bains' treatment relationship with Plaintiff lends credence to his opinions that Plaintiff is disabled because Dr. Bains was aware at the time of his opinions that the surgeries he performed did not alleviate Plaintiff's reported symptoms. For the same reason, the ALJ's characterization of Plaintiff's self-reported symptoms on which Dr. Bains based his May 2013 statement as "uncorroborated" appears inaccurate. Plaintiff made those statements in the context of a post-surgery follow-up for a procedure Dr. Bains performed two months prior. It is reasonable that Dr. Bains—as an orthopedic surgeon—would have insight into Plaintiff's expected recovery and post-surgery symptomatology sufficient to corroborate Plaintiff's subjective complaints and render an opinion on his condition.

Simply put, in assigning little weight to the opinions of Dr. Bains the ALJ failed to address the nature and extent of Dr. Bains' treatment relationship with Plaintiff. The ALJ's failure to

---

[5] The ALJ addresses Plaintiff's treatment history elsewhere in her decision when discussing his credibility, noting that he underwent "three surgeries on his lumbar spine," and "during the recovery period for his third surgery he suffered a stroke." (AR 31.) However, because the ALJ failed to address Plaintiff's treatment history with Dr. Bains in the context of the medical opinion evidence, it is not clear that the ALJ properly considered the 20 C.F.R. § 404.1527(c)(2)-(6) factors in finding that Dr. Bains' opinions were not controlling.

10

apply the appropriate factors in evaluating Dr. Bains' opinion constitutes reversible legal error. *See Trevizo*, 871 F.3d at 675-76.

### 2. Dr. Okuzumi

Dr. Okuzumi has been Plaintiff's primary care physician since January 2002. (AR 1552, Ex. 20F at 1.) In September 2014, Dr. Okuzumi signed a letter noting that Plaintiff "ha[d] been her patient for several years," and opining:

> [Plaintiff] has had chronic lower back pain for several years, he has spinal stenosis and has had three surgeries but continues to have lower back pain severely limiting his activities. He cannot carry more than five pounds.
>
> He also had a cerebellar stroke earlier this year. He uses a walker and has balance problems.
>
> I believe that his disabilities are permanent, with his lower back pains after three surgeries and neurologic issues post-stroke. He has applied for permanent disability and I agree with this.

(AR 1550, Ex. 18F at 1.) In a physical RFC questionnaire dated November 17, 2014, Dr. Okuzumi noted that she had been treating Plaintiff for over twelve years, and the frequency of her contact with Plaintiff had "increased over the years since his condition has worsened, especially since his surgery, followed by a stroke [in March 2014]." (AR 1552, Ex. 20F at 1.) Dr. Okuzumi listed an RFC reflecting a more debilitating condition than that adopted by the ALJ. (*See* AR 1553-1555.)

The ALJ afforded little weight to Dr. Okuzumi's opinions, finding that they were based primarily on Plaintiff's subjective complaints and not supported by the objective medical evidence. Despite Dr. Okuzumi's twelve-year treatment history with Plaintiff that preceded her opinions, however, the ALJ merely notes "[t]here are numerous documentations of emails and telephone contact [between Plaintiff and Dr. Okuzumi] in the two years prior to the date last insured, but few actual physical examinations." (AR 30-31.) The ALJ's broad reference to a small portion of Dr. Okuzumi's overall treatment history with Plaintiff does not adequately address the factors that must be considered "[w]hen a treating physician's opinion is not controlling." *See Trevizo*, 871 F.3d at 675 ("When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and

11

the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician."). Again, the ALJ's failure to apply the appropriate methodology in weighing the medical opinion evidence renders her decision inadequate as a matter of law. *See id.* at 676.

\*\*\*

Although the ALJ broadly addresses Plaintiff's treatment history regarding his lumbar spine elsewhere in her decision as it relates to Plaintiff's credibility, (*see* AR 31), the ALJ failed to do so in the context of the medical opinion evidence from Dr. Bains and Dr. Okuzumi. Thus, in assigning little weight to the opinions of Plaintiff's treating physicians, the ALJ failed to "apply the appropriate factors in determining the extent to which the opinion should be credited." *See Trevizo*, 871 F.3d at 675. As in *Trevizo*, "[t]his failure alone constitutes reversible legal error." *See id.* at 676.

Plaintiff's arguments regarding the ALJ's consideration of the medical opinion evidence from Plaintiff's treating physicians are intertwined with his arguments regarding the ALJ's consideration of Plaintiff's cerebellar stroke and eye condition. (*See* Dkt. No. 21 at 16-18 (discussing treatment records from Dr. Okuzumi regarding Plaintiff's post-cerebellar stroke symptoms and treating ophthalmologist Dr. Terry Wagner Hunter regarding Plaintiff's eye condition, and arguing that the ALJ "did not follow the appropriate methodology for weighting a treating physician's opinion.") Because the Court concludes that the ALJ erred in its evaluation of the treating physicians' opinions, it follows that the ALJ will need to reconsider as necessary the treatment records underlying those opinions.

**II.     Credibility Determination**

Plaintiff's opposition to Defendant's motion for summary judgment argues that the ALJ erred in finding that Plaintiff's testimony regarding pain and functional limitation was not credible.

    **A.     Legal Standard**

To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis." *Garrison*, 759 F.3d at 1014. "First, the ALJ

must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks and citation omitted). "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec.*, 278 F.3d 920, 924 (9th Cir. 2002). Thus, "general findings are an insufficient basis to support an adverse credibility determination." *Holohan*, 246 F.3d at 1208. The ALJ must instead "state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

### B. The ALJ's Analysis

Applying the two-step analysis, the ALJ first found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 27.) The ALJ next determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 28.) Because Plaintiff met the first part of the test, the ALJ could reject Plaintiff's testimony regarding the severity of his symptoms only if the record contained evidence of malingering, or "by offering specific, clear and convincing reasons for doing so." *See Lingenfelter*, 504 F.3d at 1036. Here, the ALJ's decision meets the "clear and convincing" standard.

In assessing Plaintiff's credibility regarding his subjective reports of pain and functional limitation, the ALJ identified several reasons for discrediting Plaintiff's testimony, including: (1) Plaintiff's treatment history and objective medical findings in relation to his alleged functional limitations; (2) Plaintiff's work history and activities of daily living; (3) Plaintiff's reliance on the statement of friend whose description of Plaintiff's vision problems was not consistent with the objective medical evidence of record; and (4) other specific "inconsistencies" in the record regarding Plaintiff's alleged limitations due to his cerebellar stroke, eye condition, and depression,

13

and his treatment history for same. (*See* AR 31-33.) The ALJ cited specific evidence in the record and described why that evidence rendered Plaintiff's subjective complaints not credible. (*See id.*) In sum, the ALJ found that Plaintiff's "statements and allegations about the severity and limiting effects of his impairments cannot be given full weight as the factors that affect his credibility outweigh the factors that bolster his credibility." (AR 33.)

The ALJ's credibility determination satisfies the clear and convincing standard based on her discussion of Plaintiff's alleged pain and functional limitations and the specific, substantial evidence that detracts from the credibility of those subjective reports. *See Dodrill*, 12 F.3d at 918 (noting that to satisfy the "clear and convincing" standard, the ALJ must "state which pain testimony is not credible and what evidence suggests the complaints are not credible."); *see also Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (noting the "ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon which his adverse [credibility] determination is based."). The Court is neither required nor permitted to reweigh the evidence and substitute its conclusion for that of the ALJ. *See Gutierrez*, 740 F.3d at 523 (noting that if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner.") (internal quotation marks and citation omitted). Accordingly, the Court concludes that the ALJ properly evaluated Plaintiff's testimony regarding the pain and functional limitations caused by his conditions.

### III.    Remand or Credit-As-True

Plaintiff asks the Court to vacate the ALJ's decision and remand "for the calculation and award of benefits." (*See* Dkt. Nos. 21 at 19 & 26 at 17.) When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). A remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir.

14

2017) (internal quotation marks and citation omitted).

Here, there are outstanding issues that must be resolved before a final determination can be made because although the ALJ failed to follow the required methodology in affording little weight to the medical opinions of Plaintiff's treating physicians, the ALJ's credibility determination is well-supported. *See Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2017) (affirming district court's remand for further proceedings rather than award of benefits where the ALJ erred in rejecting the medical opinion of the plaintiff's treating physician, but "[t]he ALJ's well-supported credibility concerns raise additional factual issues that require resolution."). Thus, the Court cannot conclude on the record before it that the ALJ would be required to find Plaintiff disabled if the medical opinion evidence were credited as true.

Accordingly, the ALJ must reassess the medical opinion evidence of Plaintiff's treating physicians Dr. Bains and Dr. Okuzumi, and explain the weight afforded to those opinions after consideration of "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *See Trevizo*, 871 F.3d at 675 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ must provide legally adequate reasons for any portion of those opinions that she discounts or rejects.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this order.

This order disposes of Docket Nos. 21 and 22.

**IT IS SO ORDERED.**

Dated: February 7, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

15